## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Marshall Goldman Motor Sales<br>& Leasing, d/b/a iBuy Luxury Cars,** | **Case No.  1:24-cv-1191** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Navdeep Singh, et al.,** | **MEMORANDUM OPINION & ORDER** |
| **Defendants.** | |

Currently pending is the Motion of Plaintiff Marshall Goldman Motor Sales & Leasing d/b/a iBuy Luxury Cars (hereinafter "Plaintiff" or "Marshall Goldman") for Default Judgment against Defendants Navdeep Singh and Amandeep Kaur.  (Doc. No. 15.) For the following reasons, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART, as set forth herein.

## I.    Background

On July 15, 2024, Plaintiff filed a Complaint alleging various state and federal claims against Defendants Singh and Kaur.  (Doc. No. 1.)  Therein, Plaintiff alleges the following facts.

On or about June 1, 2023, Plaintiff and Defendants entered into a contractual relationship ("the Contract"), whereby Plaintiff purchased a 2022 Lamborghini Urus ("the Vehicle") from Defendants for $245,000.  (*Id*. at ¶¶ 8, 15, 16.)  Shortly after entering into the Contract, paying $245,000.00, and taking possession of the Vehicle, Plaintiff was informed by Lamborghini Corporate in Italy that the Vehicle's odometer had been tampered with and that it was rolled back over 6,000 miles.  (*Id*. at ¶¶ 10, 16.)  Defendants admitted to the false odometer readings by stating that they

would take the Vehicle back and make Plaintiff whole.  (*Id*. at ¶ 11.)  "While exhausting attempts were made to accomplish this, to date, Defendants have refused to do so."  (*Id*. at ¶ 12.)

Plaintiff alleges claims for (1) breach of contract; (2) fraud; (3) tortious interference with business contracts; (4) tortious interference with business expectancies; (5) violation of Federal Odometer Law, 49 U.S.C. § 32703; and (6) violation of Ohio's Odometer Law, Ohio Rev. Code § 4549.43.  (*Id*. at ¶¶ 13-45.)  Plaintiff seeks compensatory and punitive damages, treble damages, and attorney fees, costs, and expenses.  (*Id.* at p. 7.)

Plaintiff perfected service on Defendants Singh and Kaur on August 30, 2024 via personal service.  (Doc. Nos. 8, 9.)  Answers were due on September 20, 2024, but not filed.  Upon application, default was entered against both Defendants pursuant to Fed. R. Civ. P. 55(a) on November 26, 2024.  (Doc. Nos. 13, 14.)

On that same date, Plaintiff filed a Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b) against both Singh and Kaur.  (Doc. No. 15.)  In support, Plaintiff attaches the Affidavit of its President, Danny Baker.  (Doc. No. 15-1.)  Among other things, Mr. Baker avers that Plaintiff  "was forced to give GMTV a one-time reimbursement check of $20,000 to settle the matter."  (*Id*. at ¶ 9.)  Neither the Complaint nor the Affidavit explains who GMTV is or why Plaintiff paid GMTV this money, and no supporting documentation of this check is provided.  Plaintiff seeks treble damages under 49 U.S.C. § 32710 in the total amount of $60,000.  (*Id*. at ¶¶ 9, 10.)  Plaintiff also seeks attorney fees and costs in the amount of $8,356.25.  (*Id*. at ¶ 11.)  No supporting documentation is provided for the requested fee award.  Lastly, Plaintiff seeks prejudgment interest, but does not provide the interest rate that it believes should be applied or the authority for its request for interest.  (*Id*. at ¶ 12.)

On December 23, 2024, Singh filed a *pro se* Motion to Stay Default Judgment.  (Doc. No. 16.)  Singh argued that Plaintiff's Motion should be stayed for thirty (30) days to allow him to secure adequate representation.  (*Id*.)  He further argued that he has meritorious defenses to the Complaint and that Plaintiff would not be prejudiced by the stay.  (*Id*.)  Defendant Kaur did not sign or otherwise join in the Motion, and there is no mention of Kaur anywhere in the Motion to Stay.  (*Id*.)

Singh subsequently filed a *pro se* "Response to Plaintiff's Allegations" on January 8, 2025.  (Doc. No. 17.)  Therein, Singh denies Plaintiff's allegation that the Vehicle had false odometer readings and asserts that he has "no knowledge or, nor involvement in, any odometer tampering." [1] (*Id*. at PageID# 59.)  Notably, there is no mention of Kaur in either of Singh's *pro se* filings, and Kaur has not filed anything on the docket or otherwise appeared in this action.

On February 3, 2025, then-assigned District Judge Christopher Boyko issued the following non-document Order: "On December 23, 2024, Defendant Navdeep Singh filed a Motion to Stay Default Judgment in which he asserts he is in the process of securing adequate representation and

---

[1] Singh further explains that "the Vehicle was purchased as a used car from Status Auto, located at 1436 Hylan Blvd., Staten Island, NY 10305" and that it had an odometer reading of 95 miles at the time of purchase.  (*Id*.)  He asserts that he "owned the Vehicle for six months and drove it minimally due to owning seven other vehicles." (*Id*.) Singh claims that "[a] sale agreement (attached hereto as Exhibit A) explicitly states that [Plaintiff] would conduct a thorough inspection of the Vehicle prior to taking possession." (*Id*.)  The "sale agreement" is, in fact, an email message from Mr. Baker to Kaur dated June 1, 2023, which explains Plaintiff's "process." (Doc. No. 17-1 at PageID# 61.)  In the email, Mr. Baker identifies one part of the process as follows:  "The transporter will take the car after satisfactory inspection and then you can deposit your equity check."  (*Id*.)  Singh asserts that "[a]t the time of the sale to [Plaintiff], the odometer reading was 295 miles, as documented by the inspection report signed by [Plaintiff's] representative (attached hereto as Exhibit C)."  (Doc. No. 17-1.)  "Exhibit C" is a photo of the dashboard of an unidentified vehicle with a mileage of 209 miles. (Doc. No. 17-3.)  The photo is not an "inspection report" and it does not contain a signature.  (*Id.*) Nonetheless, Singh claims that "Plaintiff's representative inspected and approved the Vehicle at the Defendant's residence prior to removing it." (Doc. No. 17-1.)  Singh argues that, under the principle of *caveat emptor* ("buyer beware"), Plaintiff, "as an experienced buyer, had the duty to perform proper due diligence prior to completing the purchase." (*Id*.)  Singh maintains that he "fulfilled all obligations under the terms of the sale and acted in good faith." (*Id*.)  Because Singh failed to timely Answer and/or set aside the entry of default against him under Fed. R. Civ. P. 55(a), the Court will not consider Singh's allegations in his "Response."

asked for 30 days to secure counsel and file an appropriate response.  The motion is silent as to co-defendant Amandeep Kaur.  On January 8, 2025, Defendant Navdeep Singh filed a *pro se* 'Response to Plaintiffs Allegations.'  The Response is again silent with regard to Defendant Amandeep Kaur.  Accordingly, the Court grants the Motion in Part and holds the remainder in abeyance.  Defendant(s) are ordered to file a notice with the Court no later than February 10, 2025 whether they have secured counsel or intend to proceed *pro se*.  If Defendant(s) indicate they have secured counsel then Defendants' counsel shall file a notice of appearance no later than February 14, 2025."  Non-Document Order dated Feb. 3, 2025.

Neither Singh nor Kaur filed anything on the docket, on either February 10, 2025 or February 14, 2025.  On February 19, 2025, Judge Boyko issued an Order of Recusal and the matter was reassigned to the undersigned.  (Doc. No. 18.)

On February 20, 2025, the Court issued an Order lifting the stay and abeyance as to Plaintiff's Motion for Default Judgment.  (Doc. No. 19.)  The Court then ordered as follows:

> Because he has appeared in this action, Defendant Singh shall be provided an opportunity to oppose and/or otherwise respond to the entry of default judgment and Plaintiff's Motion for Default Judgment, as follows.  **By no later than thirty (30) days from the date of this Order (i.e., by March 24, 2025), Defendant Singh may file a Motion to Set Aside Entry of Default and Brief in Opposition to Plaintiff's Motion for Default Judgment.  No further extensions will be granted.  Defendant Singh is cautioned that, if he fails to timely file the above documents, the Court will rule on Plaintiff's Motion for Default Judgment.**

> Because Defendant Kaur has not appeared in this action, the Court will proceed to rule on Plaintiff's Motion for Default Judgment as against Defendant Kaur.  Before doing so, however, the Court orders Plaintiff to supplement its Motion for Default Judgment with the following: (1) supporting documentation evidencing its $20,000 payment to "GMTV;" (2) an explanation of who GMTV is and why Plaintiff paid GMTV $20,000; (3) supporting documentation regarding Plaintiff's requested attorney's fees and costs, including timesheets and/or invoices reflecting Plaintiff's counsel's hourly rate(s) and the number of hours worked on this matter; (4) further explanation regarding Plaintiff's request for prejudgment interest (i.e., the applicable interest rate

4

and authority for Plaintiff's request for prejudgment interest); and (5) a copy of the contract between Plaintiff and Defendants.

(*Id*. at pp. 3-4) (emphasis in original).

Copies of the Court's Order were mailed to Singh and Kaur, and were not returned as undeliverable. The docket reflects that Singh did not file a Motion to Set Aside Entry of Default Judgment or Brief in Opposition to Plaintiff's Motion for Default Judgment. The docket also reflects that he has not otherwise appeared or filed any other pleading in this action since his "Response to Plaintiff's Allegations" on January 8, 2025.

On February 27, 2025, Plaintiff filed a Supplement to its Motion for Default Judgment.[2] (Doc. No. 20.) Attached thereto is the Supplemental Affidavit of Mr. Baker. (Doc. No. 20-1.) Therein, Mr. Baker avers that Plaintiff has a very good relationship with a re-sale luxury automobile company named GiveMeTheVIN, LLC ("GMTV"), which buys luxury vehicles from Plaintiff. (*Id*. at ¶ 6.) Once the Vehicle herein was purchased, Plaintiff sold it to GMTV. (*Id*. at ¶ 7.) Shortly after buying it, GMTV discovered that the odometer had been tampered with and called Plaintiff to discuss. (*Id*.) Mr. Baker avers that "at that time, Plaintiff had no idea that the odometer was tampered with as the vehicle was never driven while in Plaintiff's possession – it takes a proprietary analysis by Lamborghini which Plaintiff does not have to be able to ascertain the odometer tampering." (*Id*. at ¶ 8.) According to Mr. Baker, GMTV had to sell the Vehicle for a loss with an odometer disclosure that impacted its resale value. (*Id*. at ¶ 9.) GMTV demanded to be made whole for its loss. (*Id*.) Plaintiff then paid GMTV $20,000 "to avoid being sued for the issue of the odometer and to keep the relationship between it and GMTV in good standing." (*Id*.) In addition, Mr. Baker authenticates the

---

[2] The Certificate of Service reflects that Plaintiff mailed copies of its Supplement to Singh and Kaur via regular mail on February 27, 2025. (Doc. No. 20 at PageID# 75.)

5

Contract[3] regarding the sale of the Vehicle to Plaintiff, as well as numerous emails between Plaintiff and Defendant Kaur regarding the Vehicle, copies of which are attached as Exhibits to his Supplemental Affidavit.  (Doc. No. 20-2, 20-5.)  Plaintiff also attaches an Affidavit of counsel Erik Walker and an itemized billing statement, regarding the attorney's fees and costs incurred in this matter.  (Doc. Nos. 20-7, 20-8.)

## II.     Standard of Review

Following the clerk's entry of default pursuant to Rule 55(a) and the party's motion for default judgment under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Cantel Medical LLC v. Hall*, 2024 WL 3771805 at *2 (N.D. Ohio Aug. 13, 2024).  *See also Old Republic Surety Co. v.  T&A Construction, Inc., et al*., 2024 WL 4567262 at *2 (N.D. Ohio Oct. 24, 2024) ("[T]he Court accepts as true any well-pleaded factual allegations in the complaint that do not go to the amount of damages.")  Specifically, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Vesligaj v. Peterson*, 331 Fed. Appx 351, 355 (6th Cir. 2009); *Cantel Medical LLC*, 2024 WL 3771805 at *2.  To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Cantel Medical LLC*, 2024 WL 3771805 at *2.  *See also Mill's Pride, L.P. v. W.D. Miller Enters., LLC*, 2010 WL 987167 at *1 (S.D. Ohio Mar. 12, 2010).

---

[3] As discussed in greater detail *infra*, the Contract at issue is between "Gravity Construction Corp." and Plaintiff.  (Doc. No. 20-2 at PageID# 83.)  Defendant Singh signed the Contract on behalf of Gravity Construction Corp.  (*Id*. at PageID# 85.)  Defendant Kaur did not. (*Id*.) There is no discussion in either the Complaint, Motion for Default Judgment, or the Supplement to the Motion for Default Judgment regarding the fact that Kaur is not a signatory to the Contract.  Nor is there any allegation that Defendant Kaur is an owner of Gravity Construction Corp.

Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing" regarding damages. *Vesligaj,* 331 Fed. Appx at 354-55. An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones,* 2012 WL 3579690 at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *See American Contractors Indemnity Company v. Envirocom Construction, Inc.,* 2024 WL 810559 at *3 (N.D. Ohio Feb. 27, 2024); *The P&G Health & Longterm Disability Plan v. Molinary,* 2019 WL 358936 at *2 (S.D. Ohio Jan. 29, 2019).

## III. Analysis

### A. Liability

Upon review of the record, the Court finds that default judgment is warranted against Defendants Singh and Kaur as to certain claims, as set forth herein. Regarding Defendant Kaur, the record reflects that Kaur was duly served with the Summons and Complaint on August 30, 2024 via personal service. (Doc. No. 8.) Plaintiff moved for entry of default against Kaur, which the Clerk of Court entered on November 26, 2024. (Doc. Nos. 13, 14.) Kaur failed to plead or otherwise defend herself in this action. Kaur's failure to respond to the Complaint, entry of default, Motion for Default Judgment, and/or Supplement to Motion for Default Judgment has made it clear that she has no intention of defending this action. The Court, therefore, accepts the well-pleaded allegations in the Complaint against Kaur as true for the purposes of determining liability. *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016).

Regarding Defendant Singh, the record reflects that Singh was also duly served with the Summons and Complaint on August 30, 2024 via personal service. (Doc. No. 9.) Singh did not timely file an Answer or otherwise respond to the Complaint. Plaintiff moved for entry of default

against Singh, which the Clerk of Court entered on November 26, 2024.  (Doc. Nos. 13, 14.)  After Plaintiff moved for default judgment under Rule 55(b), Singh appeared and was granted an extension of time to seek counsel.  When counsel did not enter an appearance on Singh's behalf, this Court granted Singh additional time to file a *pro se* Motion to Set Aside Entry of Default and to oppose Plaintiff's Motion for Default Judgment.  Singh has failed to do any of these things or to otherwise defend himself in this action.  The Court, therefore, accepts the well-pleaded allegations in the Complaint against Singh as true for the purposes of determining liability.  *Zinganything, LLC*, 158 F. Supp. at 672.

Nevertheless, the Court must still determine if those facts are sufficient to state claims for relief as against Defendants Kaur and Singh.  *See Zinganything, LLC*, 158 F. Supp. at 672; *J&J Sports Prods., Inc. v. Rodriguez*, 2008 WL 5083149 at * 1 (N.D. Ohio Nov. 25, 2008).  The Court will address each of Plaintiff's claims separately, below.

### 1.      Breach of Contract

Plaintiff first seeks default judgment in its favor on its breach of contract claim in Count I.   In that Count, Plaintiff alleges that "on or about June 1, 2023, Plaintiff and Defendant[4] entered into [the Contract], whereby Plaintiff purchased the Vehicle from Defendants."  (Doc. No. 1 at ¶ 15.)  "Shortly after entering into the Contract, paying $245,000.00 and taking possession of the Vehicle, Plaintiff was informed that the odometer had been tampered with and that it was rolled back over 6,000 miles which constitutes, among other things, a breach of the Contract between the parties."  (*Id*. at ¶ 16.) "Plaintiff has fully performed all of its obligations under the Contract."  (*Id*. at ¶ 17.)  "Plaintiff has

---

[4] In Paragraph 15, Plaintiff alleges that the Contract was entered into by "Plaintiff and Defendant [singular]."  (*Id*. at ¶ 15.)  Elsewhere in the Complaint, Plaintiff alleges that "Defendants [plural] sold" the Vehicle to Plaintiff and that "Defendants [plural] breached their obligations to Plaintiff" under the Contract.  (*Id*. at ¶¶ 8, 19.)

made demands on Defendants for repayment, but Defendants failed and/or refused to make the repayment of $245,000.00 to Plaintiff."  (*Id*. at ¶ 18.) "Defendants breached their obligations to Plaintiff by failing to refund the purchase price and forcing Plaintiff to suffer losses in excess of $75,000.00 due to the fraudulent odometer reading."  (*Id*. at ¶ 19.)

The Contract is attached as an Exhibit to Mr. Baker's Supplemental Affidavit.  (Doc. No. 20-2.)  The Contract is dated June 6, 2023 and is between Gravity Construction Corp. (referred to therein as the "Seller") and Plaintiff (referred to therein as the "Buyer").  (*Id*. at PageID# 83.)  The Contract provides that "Seller desires to sell the Vehicle to the Buyer, and Buyer desires to purchase the Vehicle from the Seller, all on the terms and conditions of this Agreement."  (*Id.*)  In Section 1, the Vehicle is identified as a 2022 Lamborghini Urus (VIN ZPBUA1ZL8NLA18827) with a "current mileage" of  209.  (*Id*.)  The Contract provides that: "By signing below, I hereby certify that to the best of my knowledge, the odometer reading reflects the ACTUAL VEHICLE MILEAGE."  (*Id.*) (capital letters in original).  The Contract incorporates the "General Terms and Conditions which are shown in the Addendum attached to this Agreement."  (*Id*. at PageID# 85.)  Among other things, the General Terms and Conditions provide as follows:

> **1. Condition of Vehicle**.  In order to induce Buyer to enter into the Agreement, Seller warrants and represents to Buyer and agrees as follows: *** (e)  all other data and information concerning or relating to the Vehicle as set forth in the Agreement or provided by Seller through the Website or otherwise is true, accurate, complete, and not misleading, including the odometer reading of the Vehicle; **** Seller's representations and warranties set forth in the Agreement (including this Section of the General Terms) shall survive the transfer of the Vehicle to the Buyer and shall not merge with the Agreement and shall not be deemed to be waived or impaired by any inspection by or knowledge of the Buyer.

(*Id*. at PageID# 87.)  The General Terms further provide that "[t]he Agreement contains the entire agreement and understanding between the Parties concerning the subject matter of the Agreement

and supersedes all prior and contemporaneous agreements, whether written or oral, concerning the subject matter of the Agreement." (*Id.*) Lastly, the General Terms indicate that "[t]he Agreement shall be governed by and interpreted under the laws of the state of Ohio." (*Id.*) Notably, the Contract is signed by Defendant Singh but not by Defendant Kaur. (*Id.* at PageID# 85.)

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *Asset Mgmt. One LLC v. U.S. Bank Nat'l Ass'n*, 569 Fed. Appx 438, 441 (6th Cir. 2014) (quoting *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012)).

For the following reasons, the Court finds that Plaintiff is entitled to default judgment in its favor on Count I with respect to Singh, but not with respect to Kaur. As for the first element of its breach of contract claim, Plaintiff has alleged the existence of a contract and attached an authenticated copy of that Contract to its Supplement. However, while the Complaint includes an allegation that the Contract is between Plaintiff and "Defendants" (plural), the Contract itself only contains the signature of Singh. (Doc. No. 20-2 at PageID# 85.) Kaur is not a signatory to the Contract. (*Id.*) Further, although the Contract identifies the Seller as "Gravity Construction Corp.," the Complaint does not include an allegation that Kaur is an owner of Gravity Construction Corp. and, further, Kaur is not identified in the Contract as an owner of Gravity Construction Corp. Thus, the Court finds that Plaintiff has satisfied the first element of its breach of contract claim against Singh, but not against Kaur.

Regarding the remaining elements of its breach of contract claim, the Court finds that Plaintiff has satisfied these elements with respect to Defendant Singh. Plaintiff alleges that it "fully performed

10

all of its obligations under the Contract" and that it suffered losses as a result of the breach, satisfying the second and fourth elements.  (Doc. No. 1 at ¶¶ 17, 20.)  As for the third element, Plaintiff alleges that Defendants breached their obligations by failing to refund the purchase price and forcing Plaintiff to suffer losses "due to the fraudulent odometer reading."  (*Id*. at ¶ 19.)  As noted above, the Contract contains several provisions regarding the odometer reading, including that Seller "warrants and represents" that the Vehicle's odometer reading is "true, accurate, complete and not misleading." (Doc. No. 20-2 at PageID# 87.)  Plaintiff alleges that the Vehicle, in fact, had "false odometer readings," i.e. that Plaintiff had been informed that "the odometer had been altered and rolled back by over 6,000 miles." (Doc. No. 1 at ¶¶ 9, 10.)  Plaintiff further alleges that Defendants "admitted to the false odometer readings by stating they would take the Vehicle back and make Plaintiff whole." (*Id*. at ¶ 11.)  Taking these factual allegations as true, the Court finds that Plaintiff has established Defendant Singh's liability on its breach of contract claim in Count I.

### 2.    Fraud

Plaintiff also seeks default judgment with respect to its fraud claim in Count II.  In that Count, Plaintiff alleges that (1) "Defendants sold the Vehicle to Plaintiff knowing at all times relevant that the odometer reading for the Vehicle was inaccurate;" (2) "Defendants intentionally made false representations of material facts to Plaintiff to ensure that Plaintiff would purchase the vehicle;" and (3) "Plaintiff relied on Defendants' false representations to its detriment."  (Doc. No. 1 at ¶¶ 22, 23, 24.)

In Ohio, "[t]he elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is

true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Goodwin v. Am. Marine Express, Inc.*, 2021 WL 848948 at \*24 (N.D. Ohio Mar. 5, 2021) (quoting *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987)). "'Fraud can lead to both compensatory damages and punitive damages,' and '[a] person injured by fraud is entitled to such damages as will fairly compensate him for the wrong suffered.'" *Curran v. Vincent*, 885 N.E.2d 964, 968-69 (Ohio App. 1st Dist. 2007) (citations omitted).

Here, the Court finds that Plaintiff is entitled to default judgment in its favor on Count II with respect to both Singh and Kaur. Plaintiff alleges that Defendants made a material representation (i.e., that the current mileage of the Vehicle was 209)[5] with knowledge of its falsity and with the intent of misleading Plaintiff to ensure that Plaintiff would purchase the Vehicle. Plaintiff also alleges that it relied on Defendants' representations and suffered injury as a proximate result. Taking these factual allegations as true, the Court finds that Plaintiff has established Singh's and Kaur's liability on its fraud claim in Count II.

### 3.    Tortious Interference

Plaintiff next seeks default judgment with respect to its tortious interference claims in Counts III and IV. In Count III, Plaintiff alleges that "Defendants' false representations of the Vehicle's odometer readings constitutes tortious interference with Plaintiff's contractual relationships." (Doc. No. 1 at ¶ 27.) Plaintiff alleges that "Defendants knew that Plaintiff was in the business of buying and selling used luxury cars and by selling it a vehicle with a false odometer reading, knew Plaintiff

---

[5] Although Kaur did not sign the Contract, Mr. Baker authenticated a series of emails between himself and Kaur prior to the sale of the Vehicle. (Doc. No. 20-5.) In one of these emails, Kaur represented that the current mileage of the Vehicle was 209 miles. (*Id*. at PageID# 102.)

could not sell the Vehicle for what it was truly worth or for what it paid for the Vehicle." (*Id*. at ¶ 28.) In Count IV, Plaintiff alleges that "Defendants were aware of Plaintiff's business expectancies with its customers in the luxury used car business." (*Id*. at ¶ 31.) Plaintiff alleges that "Defendants' false representations about the Vehicle's odometer readings constitute tortious interference with Plaintiff's business relationships and expectancies in that others in the business have cast a false light on Plaintiff due to the re-sale of the Vehicle and the discovery of the odometer issue." (*Id*. at ¶ 32.) In both Counts, Plaintiff alleges that it has been damaged as a direct and proximate result of Defendants' tortious interference. (*Id*. at ¶¶ 29, 33.)

Ohio law recognizes claims for tortious interference with a contract as well as for tortious interference with a business relationship. *Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012). To prove a claim of tortious interference with a contract under Ohio law, a plaintiff must show "'(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.'" *Id*. (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F.Supp.2d 925, 942 (S.D. Ohio 2012)). "The elements of a claim for tortious interference with business relationships are almost identical, the main distinction being 'that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.'"[6] *Id*. (quoting *Diamond Wine & Spirits, Inc. v.*

---

[6] *See also Chrvala v. Borden, Inc*., 14 F.Supp.2d 1013, 1023 (S.D. Ohio 1998) (finding that, to prevail on a claim for tortious interference with a prospective business relationship, "a plaintiff must demonstrate: (1) the existence of the prospect of a business relationship; (2) that defendant knew of the plaintiff's prospective relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4) without justification; and (5) caused plaintiff to suffer damages.")

*Dayton Heidelberg Distrib. Co.,* 774 N.E.2d 775, 780-81 (Ohio App. 3rd. Dist. 2002) (internal quotation marks omitted)) (emphasis added).

Here, the Court first finds Plaintiff has not established that it is entitled to default judgment with respect to its claim for tortious interference with contract because Plaintiff does not allege that Defendants intentionally procured the breach of a contract.  Specifically, Plaintiff does not allege the existence of a contract between itself and another entity with which Defendants allegedly interfered. While Plaintiff alleges that it "was in the business of buying and selling used luxury cars," it does not allege the existence of a specific contract to sell the Vehicle to a third party.  (Doc. No. 1 at ¶ 28.) Moreover, in his Supplemental Affidavit, Mr. Baker avers only that Plaintiff has a "very good relationship with" GMTV -- not that a contract existed between Plaintiff and GMTV.  (Doc. No. 20-1 at ¶ 6.)  Additionally, even assuming Plaintiff had sufficiently alleged the existence of a contract to sell the Vehicle to a third party, Plaintiff fails to allege that Singh and Kaur had knowledge of any such contract.  Accordingly, even taking Plaintiff's factual allegations as true, the Court finds that Plaintiff has not established that it is entitled to default judgment with respect to Count III, as to either Singh or Kaur.

The Court further finds that Plaintiff has not established that it is entitled to default judgment with respect to its claim for tortious interference with business expectancies.  In order to substantiate a claim for tortious interference with a prospective business relationship, a plaintiff must demonstrate "the existence of 'an actual prospective contractual relation' that but for the interference, would have been consummated." *Weiler v. DLR Group*, 2023 WL 2926417 at * 4 (Ohio App. 8th Dist. April 13, 2023) (quoting *One Energy Ents., LLC v. Ohio DOT*, 2019 WL 453690 at * 15 (Ohio App. 10th Dist. Feb. 5, 2019)).  *See also Chrvala*, 14 F.Supp.2d at 1023 ("In terms of causation, a plaintiff must show

14

that 'but for' the alleged interference the prospective relationship would have been consummated.") (citing *Leibovitz v. Central Nat'l. Bank*, et al., 60 N.E.2d 727 (Ohio App. 8th Dist. 1944)).

Here, Plaintiff alleges generally that it is "in the business of buying and selling used luxury cars" and that Defendants were "aware of Plaintiff's business expectancies with its customers." (Doc. No. 1 at ¶¶ 28, 31.)  However, Plaintiff does not allege the "existence of an 'actual prospective contractual relation' that but for the interference, would have been consummated." *Weiler*, 2023 WL 2926417 at * 4.  In sum, even taken as true, Plaintiff's factual allegations are too vague and generalized to sufficiently allege that Singh and Kaur interfered with an actual prospective contractual relationship.  Accordingly, the Court finds that Plaintiff has not established that it is entitled to default judgment with respect to Count IV, as to either Singh or Kaur.

### 4. Violation of Federal and Ohio Odometer Law

Plaintiff seeks default judgment in its favor on its claims in Counts V and VI that Defendants violated state and federal odometer law.  In these Counts, Plaintiff alleges that "[t]he conduct of Defendants in selling the Vehicle to Plaintiff with a tampered odometer and thereby making false mileage statements to Plaintiff with intent to defraud it constitutes a violation of" 49 U.S.C. §32703 (as to Count V) and Ohio Rev. Code § 4549.43 (as to Count VI).  (Doc. No. 1 at ¶¶ 35, 41.)  Plaintiff further alleges that "[a]ll of the actions described herein were done with the intent to defraud Plaintiff." (*Id*. at ¶¶ 37, 43.)  With respect to both Counts, Plaintiff alleges that it is entitled to three times its actual damages, plus its reasonable attorney fees and costs.  (*Id.* at ¶ 36, 39, 42, 45.)

### a. Federal Odometer Act

The Federal Odometer Act ("the Act") provides for a private cause of action where a defendant violates the Act with intent to defraud. *See* 49 U.S.C. § 32710.  The Act's stated purpose

15

is: "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701(b).  *See, e.g., Lewis v. Horace Mann Ins. Co*., 410 F.Supp.2d 640, 650 (N.D. Ohio 2005).  Here, Plaintiff alleges that Defendants violated 49 U.S.C. § 32703.  That statute provides as follows:

> A person may not—
>
> (1) advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer;
>
> (2) disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer;
>
> (3) with intent to defraud, operate a motor vehicle on a street, road, or highway if the person knows that the odometer of the vehicle is disconnected or not operating; or
>
> (4) **conspire to violate this section or section 32704 or 32705 of this title**.

49 U.S.C. § 32703 (emphasis added).  Section 32705 provides, in relevant part, that "a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure: (A) Disclosure of the cumulative mileage registered on the odometer.  (B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled." 49 U.S.C. § 32705(a)(1).  That statute further provides that "[a] person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the [odometer] disclosure required by such a regulation." 49 U.S.C. § 32705(a)(2).

The Odometer Act further provides that "[a] person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction." 49 U.S.C. § 32710(b).  "A person that violates this chapter or a regulation prescribed

16

or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater." 49 U.S.C. § 32710(a).  In addition, Section 32710 provides that the court "shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person."  49 U.S.C. § 32710(b).

Here, Plaintiff alleges that Defendants sold the Vehicle to Plaintiff with knowledge that the odometer had been tampered with and was inaccurate, "thereby making false statements to Plaintiff with intent to defraud."  (Doc. No. 1 at ¶¶ 11, 22, 35.)  The Court finds that Plaintiff's factual allegations, taken as true, are sufficient to entitle it to default judgment in its favor with respect to its claims that Singh and Kaur conspired to violate 49 U.S.C. § 32705, in violation of 49 U.S.C. § 32703(4).  *See, e.g., Embry v. Discount Motors, LLC*, 2025 WL 51948 at * 4 (W.D. Ky. Jan. 8, 2025) (explaining that "[e]ven where the seller was not the one actually tampering with the odometer, courts have inferred an intent to defraud when the seller had reason to know the mileage on the vehicle was greater than reflected by the odometer and failed to take reasonable steps to determine the actual mileage.").  Accordingly, the Court finds that Plaintiff has established that it is entitled to default judgment in its favor with respect to Count V as against Singh and Kaur.

### b.  Ohio Odometer Law

In Count VI, Plaintiff alleges that Defendants violated Ohio Rev. Code § 4549.43.  (Doc. No. 1 at ¶ 41.)  That statute provides that:

> (A) No person, with intent to defraud, shall advertise for sale, sell, use, or install on any part of any motor vehicle or an odometer in any motor vehicle any device that causes the odometer to register any mileage other than the actual mileage driven by the motor vehicle. For the purpose of this section, the actual mileage driven is that mileage driven by the motor vehicle as registered by an odometer within the manufacturer's designed tolerance.

17

Ohio Rev. Code § 4549.43(A). Like its federal counterpart, the Ohio Odometer Act provides for the recovery of treble damages and reasonable attorney's fees. *See* Ohio Rev. Code § 4549.49.

For the following reasons, the Court finds that Plaintiff has not established that it is entitled to default judgment with respect to its claim for violations of Ohio Rev. Code § 4549.43. As set forth above, Section 4549.43 prohibits the advertising for sale, sale, use, or installation of a device that causes the odometer of a motor vehicle to register an inaccurate mileage, with intent to defraud. Here, the Complaint does not include any factual allegations that Singh and/or Kaur advertised for sale, sold, used, or installed a device on the Vehicle at issue herein that caused the Vehicle's odometer to register an inaccurate mileage. Thus, the Court finds that Plaintiff is not entitled to default judgment in its favor with respect to Count VI.[7]

### 5. Conclusion

For all the reasons set forth above, the Court finds that Plaintiff is entitled to default judgment in its favor on liability with respect to (1) Count I (breach of contract), as to Defendant Singh only; (2) Count II (fraud), as to both Defendants; and (3) Count V (violation of Federal Odometer Law) as to both Defendants. Plaintiff is not entitled to default judgment with respect to Counts III and IV (tortious interference) or Count VI (violation of State Odometer Law).

---

[7] It is possible that Plaintiff intended to allege that Defendants violated Ohio Rev. Code § 4549.45. That statute provides, in relevant part, as follows: "No person shall transfer a motor vehicle if the person knows or recklessly disregards facts indicating that the odometer of the motor vehicle has been changed, tampered with, or disconnected, or has been in any other manner nonfunctional, to reflect a lesser mileage or use, unless that person gives clear and unequivocal notice of the tampering or nonfunction or of the person's reasonable belief of tampering or nonfunction, to the transferee in writing prior to the transfer." Ohio Rev. Code 4549.45(A). *See KNR, Inc. v. Copart, Inc.*, 2016 WL 1182727 at * 3 (N.D. Ohio March 28, 2016) ("Ohio's version of the Odometer Act, O.R.C. § 4549.45, 'prohibits the transfer of a motor vehicle if the transferor knows or reasonably should know that the odometer has been tampered with or disconnected to reflect a lesser mileage or use.'") (quoting *Flint v. Ohio Bell Tel. Co*., 440 N.E.2d 1244, 1246 ( Ohio App. 9th Dist. 1982)). However, the fact remains that Plaintiff did not plead a violation of Ohio Rev. Code 4549.45(A) and this Court will not read an entirely separate claim into the Complaint. Thus, Plaintiff is not entitled to default judgment as to Count VI.

### B.     Damages

With liability established, the Court must determine the amount of the damages.  In light of the documents attached to Plaintiff's Motion and Supplement, discussed below, the Court concludes an evidentiary hearing is not required as to the amount of the judgment.

### 1.     Actual Damages

Plaintiff asserts that it suffered actual damages in the amount of $20,000.  (Doc. No. 15.) Plaintiff supports this amount with Mr. Baker's Affidavit, in which he avers that Plaintiff "was forced to give GMTV a one-time reimbursement check of $20,000 to settle the matter as a result of Defendants' false representations and actions as to the odometer."  (Doc. No. 15-1 at ¶ 9.)  Thereafter, this Court ordered Plaintiff to supplement its Motion with further information and evidence regarding the amount of its actual damages.  (Doc. No. 19.)  Plaintiff subsequently filed Mr. Baker's Supplemental Affidavit, in which he avers (in relevant part) as follows:

> 7.   [O]nce the Vehicle was purchased, Plaintiff sold it to GMTV who, shortly after buying it, discovered the odometer had been tampered with which prompted GMTV to call Plaintiff to discuss the issue.
>
> ***
>
> 9.   As a result, GMTV had to sell the Vehicle for a loss with an odometer disclosure that impacted its re-sale value and GMTV therefore demanded to be made whole for its loss which is why Plaintiff paid GMTV $20,000.00 to avoid being sued for the issue of the odometer and to keep the relationship between it and GMTV in good standing. (A copy of the September 28, 2023 check issued to GMTV is attached hereto and incorporated herein as Exhibit B).
>
> 10.   Therefore, the $20,000.00 was paid to GMTV due to it being sold because the Vehicle had an odometer issue that was clearly the fault of Defendants.

(Doc. No. 20-1 at ¶¶ 7, 9, 10.)  Plaintiff also attaches, as an Exhibit, a copy of a check dated September 28, 2023 from Plaintiff to GMTV for $20,000.  (Doc. No. 20-3.) The Memo line of the Check references the 2022 Lamborghini Urus, as well as the last six digits of the VIN for that Vehicle.  (*Id*.)

In light of the above the Court finds that the record demonstrates that Plaintiff is entitled to actual damages in the amount of $20,000 from Singh and Kaur.

### 2.    Treble Damages

Pursuant to 49 U.S.C. § 32710, Plaintiff seeks treble damages in the total amount of $60,000 (i.e., $20,000 x 3).  (Doc. No. 15.)  As discussed above, this Court has found that Plaintiff is entitled to default judgment in its favor with respect to its claims that Singh and Kaur conspired to violate 49 U.S.C. § 32705, in violation of 49 U.S.C. § 32703(4).  Section 32710 of the Federal Odometer Act provides that defendants who violate federal odometer regulations are "liable for 3 times the actual damages or $10,000, whichever is greater." 49 U.S.C. § 32710(a).  *See Smith v. Reed*, 2024 WL 384916 at * 2 (E.D. Mich. Feb. 1, 2024). Here, Plaintiff has introduced evidence that it suffered $20,000 in actual damages as a result of Defendants' violation of 49 U.S.C. §§ 32703(4) and 32705. Accordingly, the Court finds that 49 U.S.C. § 32710(a) entitles Plaintiff to recover treble the amount of its actual damages, i.e., $60,000.

### 3.    Attorney's Fees and Costs

Plaintiff also seeks an award of attorney's fees and costs.  (Doc. No. 15.)  Section 32710 of the Federal Odometer Act entitles successful plaintiffs to recover "costs and a reasonable attorney's fee." 49 U.S.C. § 32710(b).  The Sixth Circuit has held that a reasonable attorney fee is one "that is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Dowling v. Litton Loan Serv. LP*, 320 Fed. Appx. 442, 446 (6th Cir. 2009) (quoting *Geier*

*v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004)). The Sixth Circuit outlined the process for

determining a reasonable fee in *Dowling:*

> Determining a reasonable fee begins with calculating the product of "a reasonable
> hourly rate" and "the number of hours reasonably expended on the litigation." *Hensley
> v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This product
> has come to be known as the "lodestar." *Garner v. Cuyahoga County Juvenile Court*,
> 554 F.3d 624, 642 (6th Cir. 2009). We must indulge a "strong presumption" that the
> lodestar "represents a 'reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council
> for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

*Id*. The Sixth Circuit also noted that district courts have "broad discretion" when determining what

constitutes a reasonable hourly rate for an attorney. *Id*. at 447. In determining a reasonable rate, a

court may consider awards in analogous cases, *see Johnson v. Conn. Gen. Life. Ins. Co.,* 2008 WL

697639 at *5 (N.D. Ohio Mar. 13, 2008), as well as the court's own knowledge and experience in

awarding attorney fees. *Ousley v. Gen. Motors Ret. Program for Salaried Emps*., 496 F.Supp.2d 845,

850 (S.D. Ohio 2006).

With respect to determining whether the number of hours billed was reasonable, the

"'standard is whether a reasonable attorney would have believed the work to be reasonably expended

in pursuit of success at the point in time when the work was performed.'" *Gilden v. Platinum Holdings

Group, LLC*, 2019 WL 590745 at *4 (S.D. Ohio Feb. 13, 2019) (quoting *Wooldridge v. Marlene

Industries Corp*., 898 F.2d 1169, 1177 (6th Cir. 1990) (*abrogated on other grounds by Buckhannon

Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001))).

Here, Plaintiff requests a total of $9,626.25 in attorney fees and costs. (Doc. No. 20-7 at ¶ 3.)

To support the reasonableness of this request, Plaintiff provides the Affidavit of its attorney, Erik

Walker, as well as an itemized billing statement. (Doc. Nos. 20-7, 20-8.) These documents reflect

that Attorney Walker billed 25.20 hours[8] at an hourly rate of $350.00, for a total of $8,820.00 in attorney's fees.  (*Id.*)  Attorney Walker declares that an hourly rate of $350 is "reasonable and customarily charged in the locality for similar legal services and is commensurate with [his] 28 years of legal practice."  (Doc. No. 20-7 at ¶ 6(d)).  The billing statement also reflects costs in the total amount of $1,016.25 for UPS and certified mailing fees, two Court filing fees, and unspecified "hard costs."  (Doc. No. 20-8.)

The Court first finds that Attorney Walker's billing rate of $350/hour is reasonable given his many years of experience.  The Court has concerns, however, regarding the number of hours charged by Attorney Walker in the billing statement.  As an initial matter, Plaintiff's statement includes a number of entries that do not appear to be related to the instant action, including (1) time entries dated 2/9/24 (.40 hours) and 2/10/24 (.20 hours) for reviewing documents and drafting letters regarding a Ferrari Spider; (2) a time entry dated 2/23/24 (.20 hours) relating to "a letter from Mr. Fisch;" (3) a time entry dated 3/19/24 (1.30 hours) for "Draft Complaint against Fisch." (Doc. No. 20-8.)  There is nothing in the pleadings or in any of the documents submitted in support of Plaintiff's Motion for Default Judgment that suggest that the above time entries have anything to do with the instant action.  Accordingly, the Court will not award Plaintiff fees relating to the above four time entries.

The Court also notes that there are multiple entries on the billing statement that are dated well prior to the filing of the Complaint in this matter on July 15, 2024, including entries for reviewing

---

[8] Mr. Baker also addresses attorney's fees in his Supplemental Affidavit.  Therein, Mr. Baker avers that Attorney Walker spent a total of 36.20 hours "on this file."  (Doc. No. 20-1 at PageID# 80.)  Mr. Baker is incorrect regarding the number of hours worked.  Plaintiff's billing statement is confusing, but it appears that the 36.20 figure includes "units" that are assigned to costs rather than to units of time.  For example, a UPS mailing on February 20, 2024 is assigned a "unit" of 1.0.  Mr. Baker appears to have included "units" for costs along with the "units" for attorney fee time in reaching the figure of 36.20 hours.  A close examination of the billing statement reveals that there are, in fact, 25.20 "units" (or hours) of attorney time and 11 "units" assigned to costs.

Court orders, sending certified mail, and conducting "telephone calls with the Court." (Doc. No. 20-8.) These entries largely appear to be related to a previous lawsuit that Plaintiff filed against Singh and Kaur in this Court on February 20, 2024. *See Marshall Goldman Motor Sales & Leasing v. Singh, et al.,* Case No. 1:24cv00318 (N.D. Ohio) (Boyko, J.) (hereinafter referred to as "Case No. 24cv00318"). The Complaint in that case is identical to the Complaint filed in the instant action. In Case No.24cv00318, Plaintiff was unable to perfect service on Singh and Kaur, resulting in dismissal of the case without prejudice on July 1, 2024. *See* Case No. 24cv00318 (Doc. Nos. 5, 7.) According to the billing statement submitted by Plaintiff herein, a total of 16.90 hours were expended prior to the filing of the Complaint in the instant action. Thus, by this Court's calculation, 67% of the total hours sought in this matter (i.e., 16.90 of the 25.20 hours in the billing statement) relate to Case No. 24cv00318 and were incurred prior to the filing of the Complaint herein.

Likewise, a significant portion of Plaintiff's costs were incurred in connection with Case No. 24cv00318, including the following: (1) "United Parcel Service" fees on 2/20/24 in the amount of $12.41; (2) "US District Court" fees on 3/6/24 in the amount of $405.00; and (3) certified mail fees on 3/5/24 and 3/14/24 in the amount of $ 33.40. (Doc. No. 20-8.) This amounts to a total of $450.81 in costs that relate to Case No. 24cv00318 and were incurred prior to the filing of the Complaint herein. Plaintiff does not directly acknowledge or address the issue of whether attorney's fees and costs incurred in a separate action are recoverable herein upon the granting of default judgment.

Upon careful consideration, the Court concludes as follows. The Court finds that the hours spent by Attorney Walker on the instant case (i.e., hours spent after the dismissal of Case No. 24cv00318 on July 1, 2024) are reasonable. This includes a total of 8.80 hours at Attorney Walker's hourly rate of $350, i.e., $3,080.00. The Court further finds that time spent by Attorney Walker prior

23

to July 1, 2024 in trying to settle the matter and serve Defendants is also reasonable and recoverable herein.  This includes 6.7 hours spent between September 22, 2023 and February 2, 2024 (Doc. No. 20-8 at PageID#s 130-131) and 2.4 hours spent between March 30, 2024 and June 21, 2024 (*Id*. at PageID# 132), for a total of 9.1 additional hours at an hourly rate of $350, i.e., $3,185.00.  In sum, and upon careful review of the record, the Court finds that 17.9 hours at Attorney Walker's hourly rate are reasonable, for a total sum of $6,265.00.

Regarding costs, the Court finds that the costs incurred by Plaintiff associated with the instant case (i.e., after the dismissal of Case No. 24cv00318 on July 1, 2024) are reasonable.  This includes a total of $565.44 for the court filing fee on July 24, 2024 ($405), certified mail and "hard costs" on September 12, 2024 ($150.44), and TransUnion costs on November 30, 2024 ($10.00).  (Doc. No. 20-8 at PageID# 133-134.)  In addition, the Court finds that costs incurred by Plaintiff prior to July 1, 2024 in trying to serve Defendants are also recoverable.  This includes costs for UPS on February 20, 2024 ($12.41) and certified mail on March 5 and March 14, 2024 ($33.40), for a total of $45.81. The Court will not, however, award Plaintiff for the first court filing fee on March 6, 2024, as it is duplicative.

Accordingly, and for all the reasons set forth above, the Court awards Plaintiff the total amount of $6,265.00 in attorney fees and $611.25 in costs.

### 4.      Prejudgment Interest

Finally, Plaintiff seeks an award of prejudgment interest.  In its Motion, Plaintiff provides no explanation regarding the basis for this request, the accrual date, the applicable interest rate, or a calculation of the interest to which it believes it is entitled.  (Doc. No. 15.)  Thus, on February 20, 2025, this Court ordered Plaintiff to supplement its Motion to provide further explanation.  Plaintiff

filed a Supplement on February 27, 2025.  (Doc. No. 20.)  Therein, Plaintiff cites (1) an unreported bankruptcy court case for the proposition that an award of prejudgment interest under 28 U.S.C. § 1961 is within the court's discretion; and (2) an unreported district court case for the proposition that prejudgment interest is mandatory for prevailing on a breach of contract claim, under Ohio Rev. Code § 1343.03(A).  (*Id.*)  Plaintiff does not explain, however, whether federal or state law should apply to its request for prejudgment interest herein.  Nor does it provide the appropriate accrual date, the applicable interest rate under 28 U.S.C. § 1961, or a calculation of prejudgment interest under either 28 U.S.C. § 1961 or Ohio Rev. Code § 1343.03(A).  (*Id.*)

The Court finds Plaintiff's Supplement to be entirely insufficient.  Plaintiff was provided with ample opportunity to fully explain and support its request for an award of prejudgment interest, but failed to do so.  Accordingly, Plaintiff's request for prejudgment interest is denied.

## IV.    Conclusion

For all the reasons set forth above, Plaintiff's Motion for Default Judgment (Doc. No. 15) is GRANTED IN PART and DENIED IN PART, as follows.  Plaintiff is entitled to default judgment in its favor on liability with respect to (1) Count I (breach of contract), as to Defendant Singh only; (2) Count II (fraud), as to Defendants Singh and Kaur; and (3) Count V (violation of Federal Odometer Law) as to Defendants Singh and Kaur.  Plaintiff is not entitled to default judgment in its favor with respect to Counts III and IV (tortious interference) or Count VI (violation of State Odometer Law).  Regarding damages, the Court finds that Plaintiff is entitled to a total of (1) $60,000 in damages; (2) attorney's fees in the amount of $6,265.00; and (3) costs in the amount of $611.25. Plaintiff's request for prejudgment interest is denied.

**IT IS SO ORDERED.**

_s/Pamela A. Barker_

PAMELA A. BARKER

Date:  April 30, 2025                                              U. S. DISTRICT JUDGE

26